# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| United States, | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     v. | ) | Case No: 13 CR 50048 |
| | ) | |
| Terrance T. Washington, | ) | |
| | ) | |
|     *Defendant*. | ) | Judge Frederick J. Kapala |

## ORDER

Defendant's motion to suppress evidence and alternative request for <u>Franks</u> hearing [39] is denied. This case, as well as 11 CR 50045, are set for status hearing on 4/25/2014 at 9 a.m.

## STATEMENT

    Defendant, Terrance T. Washington, is charged with conspiring to possess 28 grams of cocaine base, mixtures containing cocaine, and mixtures containing marijuana with intent to distribute in violation of 21 U.S.C. § 846; and possessing 28 grams of cocaine base on May 16, 2013, with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Before the court is defendant's motion to suppress evidence and alternative request for a <u>Franks</u> hearing. For the reasons that follow, the motion is denied.

### I. FACTS

    On May 16, 2013, Deputy Kyle Boomer of the Winnebago County Sheriff's Department swore out a search warrant affidavit before the Honorable R. Craig Sahlstrom, an Associate Judge of the 17th Judicial Circuit, Winnebago County, Illinois. Deputy Boomer began his affidavit with the following language: "This affidavit is based on my personal knowledge, on my review of records and other material, including police reports obtained during the course of this investigation, as well as information provided to me [b]y other investigators." Deputy Boomer swore that:

> Beginning in May 2013, members of the Winnebago County Sheriff's Police Metro Narcotics Unit began receiving information from concerned citizens regarding narcotic sales at 2844 Carol Place Rockford, Illinois on a daily basis. These concerned citizens advised that unknown persons would arrive in the area in vehicles and go to the front door of 2844 Carol Place Rockford, Illinois. These unknown persons would enter the residence through the front door and then remain at the residence for a short period of time before exiting the residence from the same front door and immediately leave the area. These concerned citizens wish to remain anonymous for fear of retaliation. In my experience this type of activity is indicative

of narcotic sales.

Members of the Winnebago County Sheriff's Department Metro Narcotics Unit then performed periodic surveillance of 2844 Carol Place Rockford, Illinois. During this periodic surveillance, we observed multiple unknown subjects arrive in vehicles at 2844 Carol Place Rockford, Illinois. These unknown subjects would walk directly to the front door and then enter the residence. These subjects would remain inside the residence at 2844 Carol Place Rockford, Illinois for approximately 4-5 minutes before exiting the residence through the same door and immediately leaving the area. In my experience as a police officer, the activities occurring at 2844 Carol Place Rockford, Illinois are indicative of illegal narcotic sales.

On May 14, 2013, Deputy Kaiser and I conducted a trash recovery at 2844 Carol Place Rockford, Illinois. Deputy Kaiser and I recovered two black plastic garbage bags from the end of the driveway, near the street, directly in front of 2844 Carol Place Rockford, Illinois. The two garbage bags were securely fastened and free of any rips or tears. Deputy Kaiser and I drove directly to the predetermined location with the two black garbage bags. Upon checking the contents of a single black garbage bag, I located a plastic case that contained a small amount of a green leafy substance, seeds, and stems. I located a document addressed to Terrance Washington 2844 Carol Place Rockford, IL and several torn plastic vacuum seal bags. I also located several plastic sandwich bags. One of the bags had the corner cut off and one of the bags contained a small amount of a green, leafy, substance and a stem.

According to Deputy Boomer's affidavit, the green leafy substance recovered from the trash bags later field tested positive for the probable presence of cannabis.

Judge Sahlstrom found that sufficient facts were presented to him to establish probable cause to search 2844 Carol Place (hereafter "the residence") and issued the search warrant. The warrant was served the same day and police recovered: a laptop computer; $1,600 in U.S. currency, approximately 5.2 grams of cannabis, small plastic Ziploc bags with Superman logos, a blue Casio calculator and pieces of paper with names and money amounts, a metal barricade located behind the front door, a surveillance camera on the front of the residence, an open box of plastic sandwich bags, an open box of plastic gloves, an unopened bottle of Inositol powder, an open bottle of Inositol powder, and 13 cell phones.

## II. ANALYSIS

Defendant seeks an order suppressing the items seized from the residence contending that the warrant affidavit was insufficient to establish probable cause, that the officers could not have relied upon the warrant in good faith, and that Deputy Boomer intentionally or recklessly misled the issuing judge. The government takes issue with each contention.

### A. Probable Cause

In deciding whether a search warrant is supported by probable cause, courts must use the flexible totality-of-the-circumstances standard set forth in Illinois v. Gates:

The task of the issuing magistrate is simply to make a practical, common-sense

2

decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.

462 U.S. 213, 238 (1983). "When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause." United States v. Sutton, 742 F.3d 770, 773 (7th Cir. 2014). "Courts should defer to the issuing judge's initial probable cause finding if there is substantial evidence in the record that supports his decision." Id. (quotation marks omitted).

Defendant argues that because the warrant affidavit was lacking a statement that either the concerned citizens or the police had first-hand personal knowledge of actual illegal activity at the residence, it was insufficient to support the probable cause finding. However, first-hand personal knowledge of actual illegal activity is not required. The standard, as noted above, is "a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238, see also United States v. Aljabari, 626 F.3d 940, 944 (7th Cir. 2010) ("[O]ften, nothing will directly indicate that evidence of a crime will be found in a particular place. For that reason, an affidavit need only contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place."). This is a low evidentiary threshold, requiring only a probability or substantial chance of criminal activity, not an actual showing of such activity. United States v. Roth, 201 F.3d 888, 893 (7th Cir. 2000).

In this case, the warrant affidavit established probable cause. Deputy Boomer noted that the investigation began with the receipt of information from concerned citizens regarding narcotic sales at the residence on a daily basis. These concerned citizens indicated that unknown persons would arrive in vehicles enter the residence and then remain inside for a short period of time before exiting the residence and leaving the area. Believing that the recurrent traffic described by the concerned citizens was indicative of drug sales, members of the narcotics unit performed periodic surveillance of the residence and observed multiple unknown subjects arrive in vehicles, enter the residence, and remain inside for approximately four to five minutes before exiting the residence and immediately leaving the area. Deputy Boomer specifically noted that, in his experience as a police officer, the activities occurring at the residence were indicative of illegal narcotic sales. Thereafter, a trash recovery at the residence revealed a plastic case that contained a small amount of a green leafy substance, seeds, and stems; a document addressed to defendant at the residence, several torn plastic vacuum seal bags; and several plastic sandwich bags, one of which had the corner cut off and another of which contained a small amount of a green leafy substance and a stem. The green leafy substance recovered from the trash bags later field tested positive for the probable presence of cannabis. See United States v. McDuffy, 636 F.3d 361, 363 (7th Cir. 2011) ("Even a very small quantity of marijuana in the trash provided sufficient reinforcement of the other information in the affidavit indicating a reasonable likelihood that [the defendant] was dealing drugs from his home." ). A review of these facts, taken as a whole, would lead a prudent person to believe that there was a fair probability that contraband or evidence of a crime would be found within the residence. See id. ("Each individual detail in the affidavit would not have been sufficient by itself to support a finding of probable cause, but the details were mutually reinforcing. The whole was greater than the sum of the individual details.").

It is true, as defendant contends, that the observation of frequent visitors to the residence who stayed for only a brief period of time was consistent with innocent activities such as people responding to an advertisement offering puppies for sale. However, the visitors also may have been illegally purchasing drugs as the concerned citizens, and the narcotics unit officers performing surveillance, clearly suspected. The facts cannot be viewed in isolation from the broader context of information contained in the affidavit and the existence of innocent explanations for the activity is not sufficient to defeat a finding of probable cause. See United States v. Figueroa–Espana, 511 F.3d 696, 703 (7th Cir. 2007) ("[E]ven when innocent explanations exist for individual factors taken separately, reasonable suspicion may arise when the factors are considered together."). The court is convinced that the information in the warrant affidavit, taken together, was sufficient to cause a reasonably prudent person to believe that a search of the residence would uncover evidence of illegal drug sales.

Defendant argues that the discovery of a small amount of cannabis in the trash does not substitute for actual knowledge of drug sales. But "even a tiny bit of discarded drugs increases the likelihood that police will find more in the home." McDuffy, 636 F.3d at 364; see also United States v. Colonna, 360 F.3d 1169, 1175 (10th Cir. 2004) (affirming denial of motion to suppress where warrant was based in part on discovery of two burnt ends of marijuana cigarettes in trash).

Defendant also argues that the recovery of the plastic sandwich baggies and vacuum seal bags adds nothing to the analysis. While this evidence was somewhat benign, it is important to recognize that the plastic bags were found among suspected cannabis and one sandwich baggie found in the trash was de-cornered, which has been recognized as evidence of narcotics packaging. See United States v. Coleman, 149 F.3d 674, 677-78 (7th Cir. 1998) (finding that corner cuts from plastic baggies recovered from trash, along with other evidence, was "more than ample to support the magistrate's finding that probable cause existed"); United States v. Randle, 208 F. App'x 462, 465 (7th Cir. 2006) (referring to baggies with corners cut off recovered in trash as drug paraphernalia).

In sum, the concerned citizens' reports of drug activity at the residence based on the observation of frequent visitors who would remain for only a brief period of time were corroborated by subsequent police surveillance as well as the evidence obtained from the trash recovery. This evidence was sufficient to support the state court judge's finding that probable cause existed for issuing the search warrant for the residence.

### B. Good Faith

The Supreme Court has held that evidence obtained under a facially valid search warrant that is later found to be invalid is nonetheless admissible if the executing officers acted in good faith and had an "objectively reasonable belief in the existence of probable cause." United States v. Leon, 468 U.S. 897, 926 (1984). The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception. Id. at 922. The good faith exception does not apply, however, where the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923 (quotation marks omitted). In this case, the court does not need to address the good-faith issue at length because it has determined that the search warrant was supported by probable cause. However, the court does note that if the search warrant affidavit was somehow insufficient to support

a finding of probable cause to search, the court would find that it was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

### C. Franks Hearing

Alternatively, defendant requests a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Defendant contends that Deputy Boomer falsely asserted in his affidavit that the facts he was swearing to were based in part on police reports obtained during the investigation, when in fact there were no police reports documenting the concerned citizens' reports of suspected drug activity at the residence or of the surveillance that the police allegedly conducted in response. The government opposes the request contending that defendant has not made the substantial preliminary showing required to obtain a Franks hearing. In particular, the government maintains that Deputy Boomer made no false statement because this "investigation" was broader than just the search of the residence and notes that there was a police report generated which documented the trash recovery.

To obtain a Franks hearing, "a defendant must make a substantial preliminary showing that: (1) the affidavit contained a material false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." United States v. Smith, 576 F.3d 762, 765 (7th Cir. 2009). Thus, even an intentionally made false statement will lead to the invalidation of a search warrant if and only if the false statement was necessary to the finding of probable cause. See Franks, 438 U.S. at 155-56. No hearing need be held unless "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." Id. at 171-72.

Assuming for purposes of this analysis that Deputy Boomer intentionally claimed that there were police reports when there were not, defendant's argument fails the materiality requirement of the Franks inquiry. If Deputy Boomer's affidavit were revised to clarify that there were no police reports reflecting the concerned citizens' reported information or the officers' subsequent surveillance corroborating those reports, Deputy Boomer still swore to these facts which, as noted above, reflect a substantial chance that evidence of drug sales would be found in the residence. The fact that officers may have violated a general order of the sheriff's department requiring them to prepare police reports concerning citizens' accounts of criminal activity and the surveillance activities of police officers may be evidence of slipshod police work, but it is not determinative of the probable cause issue. See United States v. Billian, 600 F.3d 791, 794 (7th Cir. 2010) (stating that the Fourth Amendment does not require the police to follow their own procedures or even state statutes).

Defendant also argues that he is entitled to a Franks hearing based on Deputy Boomer's omission of the fact that police had information from a confidential informant which contradicted the suggestion in the affidavit that narcotics were being sold from the residence. Specifically, defendant maintains that this informant advised police that the investigation's target kept the marijuana and cocaine at a location other than the residence and that he made his sales from a black Cadillac Escalade. Like a misrepresentation, an omission is "'material' only if its inclusion would upset a finding of probable cause." McDuffy, 636 F.3d at 363. Inclusion in the affidavit of the purported information from the confidential informant would not have diminished probable cause to search the residence. Even if defendant had a "stash house" elsewhere and sometimes sold drugs

5

from a vehicle, these circumstances did not eliminate the substantial likelihood that drugs were also being sold from the residence based on the totality of the information that was included in the warrant affidavit. As a result, defendant has not made a substantial showing that Deputy Boomer's purported false statement and omission were material. Defendant is therefore not entitled to a Franks hearing.

### III. CONCLUSION

For these reasons, defendant's motion to suppress evidence and alternative request for a Franks hearing is denied. This case is set for a status hearing at 9 a.m. on April 25, 2014.

Date: 4/24/2014                   ENTER:

                                  _____

                                  FREDERICK J. KAPALA

                                  District Judge